**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| RALPH STEWART, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-07-849-CH |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF THE SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Mr. Ralph Stewart brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of the Social Security Administration denying Mr. Stewart's application for disability benefits. Pursuant to 28 U.S.C. § 636(c), the parties have consented to the exercise of jurisdiction over this matter by a United States Magistrate Judge. The Commissioner has answered and filed the administrative record ("AR"), and both parties have briefed their respective positions. Based on review of the record and issues presented, the Court reverses the Commissioner's decision and remands this case for further administrative proceedings consistent with this Memorandum Opinion and Order.

**I.   Procedural Background**

Mr. Stewart applied for disability insurance benefits and supplemental security income benefits in 2005, alleging a disability onset date of November 1, 1999. The agency denied the application initially and upon reconsideration. Mr. Stewart requested an administrative hearing, and the hearing was held on December 12, 2006. At the administrative hearing, the

onset date was amended to January 12, 2005. An administrative law judge (ALJ) issued an unfavorable decision on February 2, 2007. The Appeals Council denied Mr. Stewart's request for review, making the decision of the ALJ the final decision of the Commissioner.

## II.     The Administrative Decision

The ALJ applied the five-step sequential evaluation process. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *see also* 20 C.F.R. §§ 404.1520 and 416.920. The ALJ found at step one that Mr. Stewart had engaged in substantial gainful activity since his original alleged disability onset date of November 1, 1999. The ALJ did not, however, base his decision to deny benefits on this ground.[1] At step two, the ALJ determined that Mr. Stewart has lumbar disc disease, a severe impairment that causes significant functional limitations in Mr. Stewart's ability to work. At step three, the ALJ determined that Mr. Stewart's impairment does not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404. Subpart P, Appendix 1.

The ALJ next considered Mr. Stewart's residual functional capacity (RFC). The ALJ determined that Mr. Stewart can lift and/or carry twenty pounds occasionally and ten pounds frequently, that he can walk and/or stand for six hours in an eight-hour workday, that he can sit for two hours in an eight-hour workday or intermittently during the day, that he can occasionally crouch, kneel and stoop, that he can use his arms and hands to grasp, hold and

---

[1]The ALJ did not specifically recognize the amended onset date in his decision. He did, however, continue his analysis past step one, and the administrative record indicates that Mr. Stewart did not engage in substantial gainful activity after the amended onset date.

turn objects, that he can occasionally bend forward at the waist and occasionally bend the knees to come to rest on the knees, and occasionally bend downward by bending legs and spine.  The ALJ stated that Mr. Stewart has the RFC to perform a wide range of light work.  Based on the testimony of a VE, the ALJ determined at step four of the evaluation that Mr. Stewart could return to one of the jobs constituting his past relevant work – an assembler of small products.  Despite this finding, the ALJ went on to explore other jobs Mr. Stewart could do.

At step five, the ALJ found that Mr. Stewart could perform other jobs such as car rental deliverer, lot attendant, and truck load checker and that these jobs exist in significant numbers both in the regional and national economies.  Based on these findings, the ALJ determined that Mr. Stewart is not disabled within the meaning of the Social Security Act.

### III.    Issues Presented for Judicial Review

Mr. Stewart contends that the ALJ committed legal error in rejecting without explanation or discussion the opinion of agency physicians who opined that Mr. Stewart could stand and/or walk only two hours in an eight-hour workday.  Second, Mr. Stewart contends that the ALJ's finding that Mr. Stewart has the RFC for light work is not supported by substantial evidence in the record.  Finally, Mr. Stewart claims that the ALJ's analysis of Mr. Stewart's credibility is neither legally sufficient nor supported by substantial evidence.

**IV.	Standard of Review**

Because the Appeals Council denied review of the ALJ's decision, that decision is the Commissioner's final decision for purposes of this appeal. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal* 331 F.3d at 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether the ALJ followed the mandatory rules of law governing the weighing of particular types of evidence in disability cases, but the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

**V.	Analysis**

    **A.	Opinion of Agency Physicians**

On April 18, 2005, an agency physician completed a form detailing her opinion as to Mr. Stewart's RFC. AR 122-129. Based on her review of Mr. Stewart's medical records, the agency physician found Mr. Stewart could lift twenty pounds occasionally and ten pounds frequently; could stand and/or walk at least two hours in an eight-hour workday; and

4

could sit about six hours in an eight-hour workday. This opinion was reviewed and adopted by another agency physician. Mr. Stewart correctly states that the ALJ failed to acknowledge or discuss the agency physicians' finding that Mr. Stewart would be limited to two hours of standing and/or walking in an eight-hour workday. Despite this medical opinion that Mr. Stewart had a very limited ability to stand and/or walk, the ALJ found that Mr. Stewart could stand and/or walk for six hours in an eight-hour workday and perform a wide range of light work.[2] It appears, therefore, that the ALJ rejected the agency physicians' opinion regarding Mr. Stewart's ability to stand and/or walk. The ALJ failed, however, to discuss his reasons for rejecting this part of the opinion.[3]

The Social Security regulations set forth the framework within which an ALJ should evaluate opinion evidence of nonexamining consultative physicians. An ALJ is not "bound by any findings made by State medical or psychological consultants," but the Social Security Administration recognizes that such consultants "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(f)(2)(i); 416.927(f)(2)(i).

> When an administrative law judge considers findings of a State agency medical or psychological consultant or other program physician or

---

[2] As discussed in further detail below, this limitation is significant because if Mr. Stewart were limited to sedentary work rather than light work, it is likely that the Medical Vocational Guidelines would direct a decision that Mr. Stewart is disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.10.

[3] The VE testified that a hypothetical person with Mr. Stewart's past relevant work experience who was limited to two hours of standing and/or walking in an eight-hour workday would not be able to perform any of Mr. Stewart's past relevant work. AR 184.

> psychologist, the administrative law judge will evaluate the findings using relevant factors . . . such as the physician's or psychologist's medical specialty and expertise in [social security administration] rules, the supporting evidence in the case record, supporting explanation provided by the physician or psychologist, and any other factors relevant to the weighing of the opinions.

20 C.F.R. §§ 404.1527(f)(2)(ii); 416.927(f)(2)(ii).

In this case, the ALJ summarized some of the findings of the agency physicians but failed to include the limited ability to stand and/or walk. The ALJ's analysis of the opinion of the agency physicians is, therefore, incomplete:

> As for the opinion evidence, the undersigned has carefully considered the opinions of the State Agency physicians and finds that their review showing the claimant has a long-standing impairment of degenerative disk disease [sic].

AR 19-20. The ALJ did not finish this sentence, but it appears from the context of the decision that the ALJ accepted, or at least agreed with, the agency physicians' finding that Mr. Stewart suffers from "a long-standing impairment of degenerative disk disease." The ALJ also stated that he "does agree with [the agency physicians'] findings that [Mr. Stewart] could perform light work." AR 20. As Mr. Stewart notes, however, the agency physicians' limitation on standing and/or walking does not qualify Mr. Stewart to perform light work. Light work generally requires the ability to stand and/or walk for at least six hours in an eight-hour workday.[4] The Commissioner attributes the ALJ's failure to consider the opinion regarding the limited ability to stand and/or walk as a misreading of the findings of the agency physicians and speculates that the ALJ was "focusing on the weight limits they

---

[4] *See* discussion *infra* at 8-9.

assessed and not the limitations on standing and walking." Commissioner's Brief at 6. The Commissioner then characterizes the ALJ's error as an "arguable deficiency in opinion-writing technique" that constitutes harmless error. *Id.*

The Court does not agree that the ALJ's failure to discuss this issue is harmless. Under the Medical-Vocational Guidelines, the ultimate determination as to whether Mr. Stewart is or is not disabled may turn on whether he can or cannot perform light work. Moreover, the lack of analysis of the opinion of the agency physicians suggests that the ALJ did not consider the factors set forth in the regulations. The ALJ also failed to state what, if any, weight he afforded the opinion. On remand, the Commissioner should consider and analyze all medical opinions in accordance with the standards set forth in the regulations. If the Commissioner finds that Mr. Stewart can, in fact, perform some jobs characterized as "light," he should then consider the impact of Mr. Stewart's limited ability to stand and/or walk on the number of light jobs available.

### B. The ALJ's RFC Determination

Mr. Stewart's second claim is closely related to the first. He contends that the ALJ's RFC finding is not supported by substantial evidence. Specifically, Mr. Stewart contends that the ALJ's finding that Mr. Stewart can stand and/or walk for up to six hours in an eight-hour workday has no support in the record and is, in fact, refuted by the agency physicians' opinion that Mr. Stewart could stand and/or walk only two hours in an eight-hour workday.

The Agency has identified the physical requirements for the various categories of jobs. At issue in this case are the physical requirements of sedentary and light work. "Sedentary work" is defined as follows:

> Sedentary work. The regulations define sedentary work as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. By its very nature, work performed primarily in a seated position entails no significant stooping. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.
>
> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

"Light work" is defined as follows:

> Light work. The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing – the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.
>
> "Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the

8

> majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

SSR 83-10, 1983 WL 31251.

According to the agency physicians, Mr. Stewart retains the capacity to lift twenty pounds occasionally and ten pounds frequently. His lifting ability meets one of the criteria for light work, but his ability to stand and/or walk for only two hours in an eight-hour workday suggests that he could be limited to sedentary work. It is possible that a sufficient number of light jobs exists that Mr. Stewart could perform even with the two-hour limitation on standing and/or walking. Such a finding would justify a determination that Mr. Stewart is not disabled. In this case, however, the ALJ did not attempt to resolve this issue by questioning the VE concerning the impact on the number of light jobs available to a hypothetical individual with Mr. Stewart's limited ability to stand and/or walk.

Based on the ALJ's hypothetical question which included an RFC of a wide range of light work, the VE testified that a person with Mr. Stewart's RFC could perform a "buffing" job, one of the jobs comprising Mr. Stewart's past relevant work. The VE characterized the "buffing" job as an "assembler of small products." AR 183.

In answer to the ALJ's question, the VE also testified that Mr. Stewart would have acquired several transferrable skills from his past relevant work as a truck driver. The transferable skills identified included driving skills and "skills related to truck driving such as checking loads, maintenance, regulations." AR 182. The VE identified other light jobs

that a hypothetical person with Mr. Stewart's RFC for a wide range of light work and his transferrable skills could perform. These jobs included car rental deliverer, lot attendant, and truckload checker. AR 184. These jobs are all classified as semi-skilled and light. The VE testified, however, that there are no sedentary level jobs to which Mr. Stewart's acquired skills would transfer. AR 184.

When Mr. Stewart's representative asked the VE whether a hypothetical individual limited to two hours of standing or walking in an eight-hour day could perform Mr. Stewart's past relevant work, the VE answered "No." AR 184. Thereafter, Mr. Stewart's representative drew the attention of the ALJ to the agency physicians' opinion that Mr. Stewart could stand and/or walk only two hours in an eight-hour workday. AR 185. The VE then testified that the only work available to a hypothetical person with Mr. Stewart's limitations, including the two-hour limitation on standing and/or walking, would be unskilled, sedentary work. AR 186. In response to a question from the ALJ, the VE identified two unskilled, sedentary jobs: that of a stuffer of toys or sporting equipment and that of promotional button assembler.[5]

The ALJ's finding that Mr. Stewart could stand and/or walk six hours in an eight-hour workday is not supported by substantial evidence. This error requires reversal and remand.

---

[5]It is not clear whether the ALJ relied on the unskilled, sedentary job of "Promotional Button Assembler" in determining that Mr. Stewart is not disabled. The ALJ states that Mr. Stewart "could also work as a Promotional Button Assembler," AR 19, but this job was not listed in the ALJ's step-five determination that Mr. Stewart could perform a wide range of light work such as "Assembler of small products, Car Rental deliverer, Lot attendant, and Truck Load Checker." AR 21.

Moreover, because of his age, a finding that Mr. Stewart could perform only sedentary work, as the two-hour limitation on standing and/or walking suggests, would probably result in a finding of disability under the Medical-Vocational Guidelines. The guidelines, also known as "the grids," take into account a claimant's age, education, and previous work experience, including transferable skills, if any, in determining whether a claimant is disabled. Mr. Stewart testified that he did not graduate from high school. He was 52 years old on the amended onset date, 53 years old on the date he was last insured for disability insurance benefits, and 54 years old on the date of the hearing. At all relevant times, therefore, Mr. Stewart was "an individual approaching advanced age" as defined by the guidelines:

> Individuals approaching advanced age (age 50-54) may be significantly limited in vocational adaptability if they are restricted to sedentary work. When such individuals have no past work experience or can no longer perform vocationally relevant past work and have no transferable skills, a finding of disabled ordinarily obtains. However, recently completed education which provides for direct entry into sedentary work will preclude such a finding. For this age group, even a high school education or more (ordinarily completed in the remote past) would have little impact for effecting a vocational adjustment unless relevant work experience reflects use of such education.

20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200(g). The guidelines direct a finding of disabled for a claimant who is limited to sedentary work, who is approaching advanced age, who has limited or less education, and whose skills obtained from previous work experience are not transferable. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.10. On remand, the Commissioner should reassess Mr. Stewart's RFC, relying on evidence in the record. If the Commissioner determines that Mr. Stewart does not have the capacity to meet all of the physical requirements for light work, the Commissioner must then determine the impact of

Mr. Stewart's limitations on the number of light jobs available in the national economy. Finally, if the Commissioner finds that Mr. Stewart is actually limited to sedentary jobs, the Commissioner must determine whether a finding of disabled is mandated by the Medical-Vocational Guidelines.

### C. The ALJ's Credibility Assessment

Mr. Stewart's contends that the ALJ's credibility assessment is flawed and that the case must be reversed and remanded on this basis. The Court disagrees.

"Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). Nevertheless, a court may review an ALJ's credibility findings to ensure that the ALJ's factual findings underlying the credibility determination are "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett*, 395 F.3d at 1173 (quotation omitted).

To be considered disabling, pain must be so severe, either by itself or combined with other impairments, that it precludes any substantial gainful employment. *See Brown v. Bowen*, 801 F.2d 361, 362-363 (10th Cir. 1986). "A claimant's subjective allegation of pain is not sufficient in itself to establish disability." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). Rather, "[b]efore the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged

disabling pain." *Id.* (citations omitted). The Tenth Circuit Court of Appeals has explained the proper analysis of subjective allegations of pain:

> The framework for the proper analysis of Claimant's evidence of pain is set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Id.* (quotation omitted). In assessing an individual's credibility regarding symptoms, the administrative law judge should consider factors such as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (*citing Huston v. Bowen*, 838 F.2d 1125 (10th Cir. 1988)). As previously stated, credibility findings should be "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler*, 68 F.3d at 391. Nevertheless, the Tenth Circuit has "not reduced credibility evaluations to formulaic expressions: '*Kepler* does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied.'" *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (*quoting Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

In this case, the ALJ stated that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]"  AR 19.  In discounting Mr. Stewart's credibility, the ALJ stated that Mr. Stewart's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the [Mr. Stewart's] statements concerning the intensity, persistence and limiting effects of these symptoms are not found entirely credible."  AR 19.  The ALJ then linked his credibility findings to evidence in the record:

> The claimant does not seek regular treatment.  He has no difficulties with ambulation as he was able to move around the room in a normal manner.  The claimant does not give proof of compromised nerve roots.  The new medication shows he has been prescribed Flexeril and Tramadol for pain, but he does not take his medication consistently.

AR 20.  These observations, based on specific evidence in the record, are sufficiently linked to the ALJ's credibility finding and remand on this basis is not required.

## **SUMMARY**

The decision of the Commissioner is reversed, and the cause is remanded for further administrative proceedings consistent with this Memorandum Opinion and Order.

ENTERED this __2nd__ day of July, 2008.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE